**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMER MIR, | : | |
| Petitioner, | : | Civil Action No. 14-3627 (JLL) |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**LINARES**, District Judge:

Currently before the Court is the amended motion of Amer Mir ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No 4). Following several extensions, the Government filed a response to the motion (ECF No. 16), to which Petitioner has replied. (ECF No. 18). For the following reasons, this Court will deny Petitioner's motion and deny him a certificate of appealability.

## I. BACKGROUND

Because of the nature of the claims Petitioner presents in his amended motion, only a brief recitation of the background of this matter is necessary to provide context for this Court's resolution of his claims. The Third Circuit Court of Appeals provided the following summary of the basic facts underpinning the convictions of Petitioner and his co-defendant Frederick Ugwu in the opinion affirming the convictions and sentences of both men:

> Ugwu and [Petitioner, Amer Mir,] were charged in a ten-count Superseding Indictment with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and money laundering. Also charged were, among others, Michael Eliasof, a

real estate agent, and Jerry Carti, a loan officer and part owner of U.S. Mortgage[, both of whom pled guilty.] The charges arose out of a scheme to sell two and three-family homes in the Paterson, New Jersey[,] area at grossly inflated prices to unqualified buyers.

Specifically, Ugwu, an experienced real estate investor, purchased properties in poor condition for an average purchase price of $85,000. He made minimal, if any, repairs to the homes to make them appear habitable to appraisers and prospective tenants. Eliasof introduced potential buyers to [Petitioner], a loan officer at United Home Mortgage. The prospective purchasers were told that Eliasof would manage the properties and that the mortgage payments would be covered by rental payments. [Petitioner] and Carti falsified loan applications so that unqualified buyers were approved. Once the unqualified buyers were approved, closings would take place at the law office of William Colacino, an attorney and municipal judge. At closing, the conspirators prepared false RESPA settlement statements that misrepresented moneys due from the buyers and payable to the sellers. The buyers signed these documents without reviewing them and left without keys to the properties.

Ugwu appeared at the closings with his attorney, generally after the buyers had left. Ugwu's attorney typically reviewed the documents containing false information regarding buyer payments. Ugwu falsely assured his attorney that he had already received fictitious deposits reflected on the closing documents prior to signing. The conspirators split the proceeds of the fraudulently obtained mortgage loans.

Throughout the life of the scheme, Ugwu received almost $4 million for his role, and was responsible for losses totaling more than $1.6 million. [Petitioner] received at least $210,000, and was responsible for more than $2.3 million in losses.

*United States v. Ugwu*, 539 F. App'x 35, 38 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 970 (2014).

Following several continuances granted at the request of all parties based on the complexity of this case, and several motions, Petitioner's and his co-defendant's trial began in November 2009. (Docket No. 08-561 at ECF Nos. 70-114). On December 17, 2009, the jury found Petitioner guilty of four of the counts of the indictment including one count of conspiracy to commit wire fraud and three counts of wire fraud, but acquitted him of additional wire fraud and money

laundering charges. (Docket no. 08-561 at ECF No. 116). On May 2, 2011, this Court sentenced Petitioner to seventy months imprisonment for each count on which he was convicted to run concurrently, and to a three year term of supervised release following Petitioner's release from prison. (Docket No. 08-561 at ECF No. 173, 175). Petitioner ultimately chose to appeal his conviction and sentence, and the Third Circuit affirmed this Court's judgment in September 2013. *Ugwu*, 539 F. App'x at 35. Petitioner's petition for a writ of certiorari was thereafter denied by the Supreme Court on January 13, 2014. *Mir*, 134 S. Ct. at 970. Petitioner then filed his amended motion to vacate his sentence. (ECF Nos. 1, 4).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

3

**B. An evidentiary hearing is not required in this matter**

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also Booth*, 432 F.3d at 546. For the reasons set forth below, all of Petitioner's ineffective assistance claims are clearly without merit based on the information in the record, and therefore no hearing is required for the resolution of Petitioner's amended motion to vacate his sentence.

**C. Petitioner's Ineffective Assistance Claims**

In his motion to vacate his sentence, Petitioner asserts several claims, all of which are based on his allegation that his trial counsel was constitutionally ineffective. The legal standard which applies to ineffective assistance of counsel claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

4

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81. This Court will address each of Petitioner's allegations of ineffective assistance of counsel in turn.

## 1. Petitioner's Speedy Trial Act ineffective assistance claim

Petitioner argues that his trial counsel was constitutionally ineffective in failing to move for a dismissal of Petitioner's indictment pursuant to the Speedy Trial Act. In order to establish

*Strickland* prejudice for the failure to make a Speedy Trial Act motion, "it is not enough to show that the indictment would have been dismissed, Petitioner is instead required to show that, more likely than not, the motion would have resulted in a dismissal *with prejudice*." *Christie v. United States*, No. 12-988, 2015 WL 2400048, at *16 (D.N.J. May 20, 2015); *see also United States v. Zahir*, 404 F. App'x 585, 588 (3d Cir. 2010). Pursuant to the Act, a trial in a criminal case "shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act, however, creates several classes of time which are excluded from the seventy day statutory period including delays resulting from the filing of pretrial motions, *see United States v. Tinklenberg*, 563 U.S. 647, 656-60 (2011) (all pretrial motions automatically toll the running of the Speedy Trial clock through the hearing on or other prompt disposition of the motions), and any period of delay which results from the grant of a continuance which the trial court finds to be in the interests of justice. *See* 18 U.S.C. § 3161(h)(1)-(7). The statute also provides that any excludable period which applies to one defendant in a multi-defendant case will also be excludable from the Speedy Trial clock of his co-defendants. *See United States v. Novak*, 715 F.2d 810, 821 (3d Cir. 1983), *abrogation on other grounds recognized*, *United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987); *see also* 18 U.S.C. § 3161(h)(6). Where a Speedy Trial violation does occur, the Act requires the Court to determine whether a dismissal should be with or without prejudice given consideration of factors including "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1).

In this matter, Petitioner cannot show that he suffered a violation of the Act sufficient to require the dismissal of his indictment with prejudice, and thus cannot show that he was prejudiced by counsel's failure to make a Speedy Trial motion.  Following his indictment, Petitioner initially appeared before this Court on August 22, 2008.  (Docket No. 08-561 at ECF No. 20).   Twenty five days later, on September 16, 2008, this Court entered an order, with the consent of all counsel, finding that Petitioner's case was a complex case which required considerable preparation, and thus found that it would be in the interests of justice to delay trial until May 4, 2009, and specifically excluding all time between September 16 and May 4 from the Speedy Trial Act period. (Docket No. 08-561 at ECF No. 27).  On April 3, 2009, this Court entered a second complex case order, again with the agreement of counsel, again finding it would be in the interests of justice to delay trial until June 8, 2009, and thus excluded the period between May 4, 2009 and June 8, 2009, from the Speedy Trial clock.  (Docket No. 08-561 at ECF No. 38).

Prior to the conclusion of those excluded periods, in April 2009, the Government filed a pre-trial motion.  (Docket No. 08-561 at ECF No. 39).  That motion was not decided until August 26, 2009. *See Tinklenberg*, 563 U.S. at 656-60.  (Docket No. 08-561 at ECF No. 56).  Thus, the period between June 8, 2009, and August 26, 2009, was also excluded from the Speedy Trial clock. Likewise, Petitioner and his co-defendant also filed a pre-trial motion on June 29, 2009, which was not decided until August 25, 2009, providing a further reason for excluding that period of time.  (*See* Docket No. 08-561 at ECF Nos. 50, 55).  Once the Speedy Trial clock resumed, thirty-three more days passed before the Government and one of Petitioner's co-defendants filed motions *in limine o*n September 29, 2009.  (Docket No. 08-561 at ECF No. 58).  Those motions were not fully briefed until October 15, 2009, and this Court decided those motions on October 19, 2009, and thus the period between September 29 and October 19, 2009, was likewise excluded from the

speedy trial clock. *Tinklenberg*, 563 U.S. at 656-60. (*See also* Docket No. 08-561 at ECF Nos. 61, 62, 64, 65-67). Petitioner's trial began sixteen days later on November 4, 2009. (Docket No. 08-561 at ECF No. 70).

Thus, twenty five days passed between Petitioner's initial appearance and when the first excludable period began. Petitioner's Speedy Trial clock did not begin to run once again until after August 26, 2009. At that point, thirty-three more days passed before an excludable period once again began. The Speedy Trial clock once again began after October 19, 2009, and sixteen days passed from there before Petitioner's trial began. Thus, in the best possible case for Petitioner, his prosecution exceeded the seventy day Speedy Trial clock by four days.

What this best case calculation ignores, however, is the fact that this Court rescheduled the trial in this matter from June 2009 until October 2009 at a hearing in June 2009 because Petitioner's own counsel would not be available for the scheduled trial date and no date prior to October 2009 was otherwise acceptable for remaining counsel and the Court. (*See* Document 1 attached to ECF No. 16 at 41-51). Thus, for Petitioner to assert that he was prejudiced by any delay between June and October 2009 is at best disingenuous. *See United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994) (defendants are not free to abuse the Speedy Trial Act to their own benefit and cannot benefit by way of dismissal from continuances they themselves request). Were it not for the unavailability of Petitioner's counsel of choice, this matter could have proceeded to trial at an earlier date. Because this Court did not enter a formal order finding the interests of justice warranted a cessation of the Speedy Trial clock until October 2009, however, this Court cannot categorically hold that no Speedy Trial violation, however slight, occurred in this case.

Ignoring the trial date rescheduling discussed above, the best possible reading of Petitioner's case for the purposes of his motion to vacate results in his trial beginning four days

after the seventy day Speedy Trial Act period had elapsed. Even under that reading, however, Petitioner cannot show that he was prejudiced by counsel's failure to move for a dismissal under the Speedy Trial Act. As stated above, a petitioner can only show prejudice from a failure to make a Speedy Trial motion where he shows that such a motion would have resulted in the dismissal of his indictment *with prejudice*. *Christie*, 2015 WL 2400048 at *16; *see also Zahir*, 404 F. App'x at 588. Petitioner cannot do so here. Turning to the first factor used to determine whether a dismissal with prejudice is appropriate, it is clear that Petitioner's fraud charges were serious, which cuts in favor of a dismissal without prejudice. Likewise, the facts in this case indicate that the largest period of not-excluded delay in this matter was the result of the unavailability of Petitioner's own counsel of choice for a trial date prior to October 2009. Absent counsel's unavailability and Petitioner's choice to proceed with that counsel, no Speedy Trial violation would have occurred, which cuts strongly in favor of a without-prejudice dismissal at most. Likewise, the impact of a re-prosecution on the administration of justice and the Act would have been slight, because the violation alleged in this matter only exceeded seventy days by four days and was largely the result of Petitioner's own choices, which also cuts in favor of a dismissal without prejudice at most. Thus, all of the statutory factors in this matter indicate that the best case result that Petitioner could have received from a Speedy Trial motion would have been a dismissal without prejudice due to a technical violation of the Act for which Petitioner and his counsel of choice were largely responsible, and Petitioner therefore cannot establish that he suffered *Strickland* prejudice from counsel's failure to make such a motion. *Christie*, 2015 WL 2400048 at *16; *see also Zahir*, 404 F. App'x at 588. As Petitioner cannot establish prejudice, he is not entitled to relief on his Speedy Trial Act ineffective assistance of counsel claim. *Id.*

**2.  Petitioner's severance motion ineffective assistance of counsel claim**

Petitioner next argues that his trial counsel was ineffective in not moving to sever his case from that of one of his co-conspirators prior to trial.  In order to make out the prejudice prong of the *Strickland* test on the basis of a claim that counsel failed to make a severance motion, a petitioner must not only show that, had the motion been made, severance would have been granted, but also that the granting of severance would have led to a different ultimate result at trial.  *See, e.g., Rainey v. Sec'y Pennsylvania Dep't of Corr.*, 658 F. App'x 142, 153 (3d Cir. 2016).  Where two defendants are properly joined for trial, a district court should only grant a motion for severance where there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  Joint trials are especially favored, and severance in turn disfavored, in cases involving multiple individuals charged in a single conspiracy, as a joint trial aids the jury in determining the full extent of the conspiracy and prevents the Government from being disadvantaged through the disclosure of its case to as of yet untried co-conspirators.  *Id.*

In this matter, although Petitioner admits that he and Ugwu were properly joined for trial, Petitioner asserts that his counsel should have moved for severance because Petitioner alleges that he did not know his co-defendant and co-conspirator, Ugwu; because most of the evidence admitted at trial was directed at Ugwu rather than at Petitioner; and because this resulted in a longer than usual trial for Petitioner. As to Petitioner's assertion that he did not know Ugwu, that assertion is immaterial; there is no requirement that all of the co-conspirators in a single enterprise know one another, either for the purposes of being tried jointly or for purposes of being found guilty of engaging in the conspiracy in question. *See, e.g., Granada v. United States*, 51 F.3d 82, 85 (7th

10

Cir. 1995).  Likewise that some of the evidence admitted at trial was only applicable to the actions of Ugwu rather than Petitioner, would not warrant severance.  *See, e.g., United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).  As Petitioner was also not entitled to a short trial, Petitioner has presented nothing in his amended motion to vacate which would indicate that he was prejudiced by the joinder of his case to Ugwu's for trial.  Petitioner has failed to establish in any way that any right of his was subject to a serious risk of compromise from the combined trial, nor that the combined trial had the capacity to mislead or confuse the jury which convicted him.  That the jury convicted Petitioner of some counts of his superseding indictment but not of others suggests that the jury was able to parse and consider the various facts presented at trial, and that neither the long trial nor the joinder of Ugwu deprived Petitioner of a fair trial including a reliable determination as to his guilt or innocence.  As a result, Petitioner has failed to show that any motion to sever would have been successful, and cannot establish that he suffered prejudice as a result of counsel's failure to make such a motion.  *Voigt*, 89 F.3d at 1094; *Rainey*, 658 F. App'x at 153.  Petitioner's severance related claim provides no basis to amend or vacate Petitioner's sentence.

**3.  Petitioner's plea advice ineffective assistance claim**

Petitioner contends in his amended motion and in his reply brief that his trial counsel was constitutionally ineffective in failing to negotiate a plea agreement and in suggesting that Petitioner would be successful at trial.  The Third Circuit has provided the following guidance in dealing with ineffective assistance claims arising out of the plea negotiation stage:

> The Court has []emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, --- U.S. ---, 132 S.Ct. 1376, 1384[] (2012).

> When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S.Ct. 1340[] (2014). We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43.   In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent...." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

*United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

Even where a petitioner is able to show that counsel's deficient performance deprived him of the ability to make an informed decision to plead guilty rather than proceed to trial, the petitioner must still show that he was prejudiced by that alleged failure.   To establish prejudice for such a claim, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner to] show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012).   Such a showing requires that the petitioner establish that he would have accepted a plea deal, that the deal in question was offered and would not have been withdrawn by the Government, that the Court would have accepted that plea, and that the sentence received from the plea agreement would ultimately have been less severe than the sentence the petitioner received after trial.   *Id.* at 1385.   If the petitioner cannot show that a plea offer was made, however, "this issue 'simply does not arise,' and the [petitioner] cannot demonstrate [*Strickland*] prejudice." *Herrera-Genao v. United States*, 641 F. App'x 190, 192 (3d Cir. 2016) (quoting *Lafler*, 132 S. Ct. at 1387); *see also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("to establish . . .

prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government").

In this matter, there is no evidence that Petitioner was ever formally offered a plea agreement by the Government. Indeed, according to the Government, Petitioner never expressed any interest in negotiating or pursuing a plea deal, and no formal offer was ever discussed let alone reduced to writing. (*See* ECF No. 16 at 25). Petitioner in his filings fails to state that there is any plea deal to which he would have pled guilty had one been offered, and has certainly not shown that there was a deal to which he would have pled which would have been acceptable to the Government and this Court, or that such an entirely theoretical plea deal would have resulted in a lesser sentence. Petitioner's ineffective assistance claim is thus entirely speculative and expresses little more than Petitioner's latter day regret as to the outcome of his trial. Because Petitioner cannot show that he was ever offered a plea agreement, and because Petitioner does not even allege that there was an agreement to which he would have pled guilty had he been given proper advice, Petitioner's claim fails to allege, let alone prove, that he was prejudiced by counsel's alleged failures, and Petitioner's plea related *Strickland* claim must therefore fail. *Lafler*, 132 S. Ct. at 1387; *Herrera-Genao*, 641 F. App'x at 192; *Kingsberry*, 202 F.3d at 1032.

**4. Petitioner's witness based ineffective assistance of counsel claim**

Petitioner next asserts that his trial counsel was ineffective for failing to call certain witnesses at trial. Where a petitioner challenges counsel's decisions as to which witnesses to call at trial, courts are required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons that the petitioner's counsel may have had for proceeding as he did. *See Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014). To succeed on such a claim, a Petitioner must "overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  Even if a petitioner can show that his counsel's failure to call a certain witness was not sound strategy and was instead the result of deficient performance, he must still show that, had counsel called the witness in question, the result of his trial would have been different.  *Id.* at 693-94.  The failure of a petitioner "to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a *prima facie* showing of [*Strickland*] prejudice."  *See Tolentino v. United States*, No. 13–4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *Judge*, 119 F. Supp. 3d at 285; *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

Here, Petitioner claims that counsel was deficient in failing to call as a witness at trial one of his co-conspirators, Eliasof, who had been a cooperating witness for the Government but whom the Government chose not to call at trial.  In raising this claim, Petitioner fails to provide even an allegation as to what testimony Eliasof would have given, instead simply presuming that his testimony would have implicated Ugwu but not Petitioner, and has certainly failed to provide a sworn affidavit setting forth what testimony Eliasof would have provided at trial.  Because Plaintiff has failed to provide such a sworn statement, and indeed has failed to provide any argument as to what testimony Eliasof would have provided had counsel called him, Petitioner cannot establish even a *prima facie* case of *Strickland* prejudice.[1]  *Duncan*, 256 F.3d at 201-02; *Judge*, 119 F. Supp. 3d at 285.

---

[1] In his memorandum in support of his motion to vacate sentence, Petitioner suggests that there may have been other witnesses that counsel failed to call. (*See* Document 1 attached to ECF No. 4 at 2).  Petitioner does not identify who these proposed witnesses are, nor does he provide any documentation, let alone sworn statements, setting forth what those witnesses would have testified to had they been called at trial.  Because Petitioner has failed to identify any witnesses other than Eliasof or provide any clue as to their proposed testimony, he cannot show *Strickland* prejudice, and any claim of ineffective assistance of counsel on such a ground must fail to the extent Petitioner wished to raise it.  *Duncan*, 256 F.3d at 201-02; *Judge*, 119 F. Supp. 3d at 285.

While Petitioner's failure to provide a sworn statement as to how Eliasof would have testified at trial is fatal to his ineffective assistance of counsel claim, the Court must note that this is not a case in which the alleged witness's testimony is left solely to speculation. Because Eliasof was, prior to trial, a cooperating witness for the Government that the Government chose not to call as a witness at trial, there are memoranda of interviews with Eliasof in the record of this case. (*See* Document 1 attached to ECF No. 16 at 2-6). The memoranda of these interviews indicate that Eliasof told the Government that he was aware that many of the victims of the conspiracy in this matter received fraudulent loans, that Petitioner was the loan officer who was used to secure these fraudulent loans with the help of Carti, and that Eliasof had offered to provide Petitioner with any paperwork he needed to secure these fraudulent loans in furtherance of their conspiracy. (*Id.* at 4). Eliasof further told investigators that Mir had had other members of the conspiracy provide him with falsified letters of good credit for the investor victims. (*Id.* at 5). Thus, even if the Court were to put aside the failure of Petitioner to provide sworn affidavits, had counsel chosen to call Eliasof even though Eliasof had refused to speak with Mr. Ugwu's lawyer previously, it appears that Eliasof's testimony at trial would have run directly counter to Petitioner's interests. Thus, to call Eliasof based on these memoranda, without having been able to speak to him after Eliasof declined to speak with the other defense counsel in this matter, would have been a poor choice indeed. It is therefore clear that Petitioner has failed to show any prejudice resulting from counsel's "failure" to call Eliasof as a defense witness, and Petitioner has not shown ineffective assistance of counsel on that basis. *Strickland*, 466 U.S. at 689-94.

## 5. Petitioner's sentencing ineffective assistance of counsel claim

Petitioner's final claim in this matter is that counsel was ineffective at sentencing in withdrawing his objection to the loss calculation in his presentence report ("PSR"), and in failing

to object to the abuse of trust enhancement applied to his sentence based on his being a loan officer. In order to establish *Strickland* prejudice for such a claim, Petitioner must show that, but for counsel's withdrawal of his objection to the loss amount or failure to object to the abuse of trust enhancement, the outcome of this matter would have been different and Petitioner would have received a less onerous sentence. *See, e.g., Glover v. United States*, 531 U.S. 198, 203-04 (2001) (*Strickland* prejudice results from failure to object to an alleged sentencing error where Petitioner receives a harsher sentence as a result). This Court will turn first to Petitioner's allegation that counsel should have objected to the abuse of trust enhancement before addressing Petitioner's loss amount claim.

Petitioner asserts that counsel should have objected to the addition of an abuse of trust enhancement to his sentence under the sentencing guidelines. The Third Circuit addressed the propriety of an abuse of trust enhancement in cases dealing with loan officers in affirming Petitioner's sentence on direct appeal:

> To determine if the "abuse of trust" enhancement is applicable, the District Court will consider whether the defendant has abused a "position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. If the District Court finds such abuse, the sentencing guidelines "require the sentencing court to increase the offense level by two." *United States v. McMillen*, 917 F.2d 773, 775 (3d Cir. 1990).

> The District Court must first determine whether a defendant occupied a position of trust. Three factors govern the District Court's determination of this threshold issue: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in the defendant *vis-à-vis* the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." *United States v. Thomas*, 315 F.3d 190, 204 (3d Cir. 2002) (citing *United States v. Iannone*, 184 F.3d 214, 223 (3d Cir. 1999)).

Mir was employed as a licensed mortgage loan officer by United Home Mortgage. In that capacity, he acted as a "middleman" between buyers and lenders in return for a commission, predominantly completing loan applications for two specific lenders. Although we have not decided in a precedential opinion whether or not mortgage brokers necessarily occupy a position of trust with respect to their client lenders, the Courts of Appeals for the Fifth and Eighth Circuits have held that mortgage brokers plainly hold positions of trust with respect to their client lenders, because those lenders depend on them to provide accurate information about prospective borrowers. *United States v. Septon*, 557 F.3d 934, 937–38 (8th Cir. 2009); *United States v. Wright*, 496 F.3d 371, 377 (5th Cir. 2007). In *United States v. Fuchs*, 635 F.3d 929 (7th Cir. 2011), by way of contrast, the Seventh Circuit, while refusing "to say that a mortgage broker can never occupy a position of trust with respect to his lenders," *id.* at 937, found that the evidence did not establish "a special relationship of trust outside of the ordinary arms-length, commercial relationship between [the broker] and the lenders." *Id.*

In this case, the Presentence Report accurately stated that [Petitioner] repeatedly falsified information on loan applications to make it appear that borrowers qualified for financing when in fact they did not. Unlike in *Fuchs*, the evidence in this case was not limited to generalities concerning the structure of the mortgage financing industry. Instead, there was evidence that [Petitioner], as a licensed mortgage loan officer, used phony verifications of employment, earnings and credit history to induce lenders who reposed trust in him to extend more than $2 million in credit over a period of time exceeding three years. It is evident that [Petitioner]'s position made the fraud more difficult to detect, considerable authority to make the transactions was accorded Mir, and there was substantial reliance upon his integrity. Under the circumstances, the District Court did not plainly err in finding that Mir both occupied a position of trust *vis a vis* the lenders, and abused that trust to facilitate and conceal the crime.

*Ugwu*, 539 F. App'x at 40-41.

In this matter there is no doubt that any objection counsel could have raised to the abuse of trust enhancement would have been rejected as meritless, and that Petitioner therefore suffered no prejudice as a result of counsel's failure to raise such an objection. As the Third Circuit explained, during the course of the conspiracy at issue in this case, the loan-making institutions Petitioner

deceived relied upon him to provide accurate information as to the investor-victims who sought those loans. Petitioner abused that trust and reliance by filing fraudulent documents with those institutions repeatedly, and through his fraudulent abuse of the reliance of those institutions secured loans which harmed not only the loan institutions but also the investors who "received" those fraudulently obtained loans in the hopes of securing some measure of financial security. Both sides of the transaction relied upon Petitioner, and Petitioner ultimately used that reliance to defraud them and obscure the wrongdoing of his co-conspirators, ultimately making their fraud harder to detect. There is thus no doubt that this Court would have rejected any objection as to an abuse of trust, and Petitioner cannot show that the failure to raise such an objection resulted in him receiving a harsher sentence. *Id.*

Finally, Petitioner asserts that counsel proved ineffective when he withdrew his objection to the loss amount calculation contained in the PSR in this matter. In support of this contention, Petitioner only offers the following – that his counsel filed his sentencing memorandum late resulting in it receiving little consideration from this Court,[2] and that "the loss amount was challengeable if counsel would have investigate[d] the law in a timely manner." (ECF No. 4 at 8). Under § 2B1.1(b)(1), a sentencing court must take into account the amount of the loss caused by the criminal actions of certain defendants in sentencing them. Pursuant to that Guideline, the sentences of these defendants, including those engaged in fraud offenses such as Petitioner, are increased by a certain amount based on the amount of losses inflicted by the defendant's crime.

---

[2] To the extent Petitioner contends that this Court did not consider his counsel's late filed sentencing memorandum, that statement is patently false and is directly contravened by the record. (Document 1 attached to ECF No. 16 at 155-57). As the Sentencing Transcript makes clear, while this Court did not appreciate the late nature of the filing, Petitioner's sentencing submission was read and considered in full by this Court, and was not in any way given short shrift. (*Id.*).

18

*Id.* For the purposes of this calculation, the "loss" involved in an offense is the "greater of [the] actual loss or intended loss." *United States v. Nagle*, 803 F.3d 167, 179 (3d Cir. 2015) (internal quotations omitted). Actual loss in this context means "the reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss instead encompasses "the pecuniary harm that was intended to result from the offense." *Id.* (quoting U.S.S.G. § 2B1.1 cmt. 3(a)(i)-(ii)). Pecuniary harm under the Guideline is any "harm that is monetary or that otherwise is readily measurable in money." U.S.S.G. § 2B1.1 cmt. 3(a)(iii). The Guideline requires the sentencing court to take into account the available evidence in determining the loss amount and requisite sentencing enhancement, but in considering that evidence the court "need only make a reasonable estimate of the loss." *Id.* at cmt. 3(c). While the Government bears the initial burden of establishing the loss amount by the preponderance of the evidence, once it has done so the burden of production shifts to the defendant, who must "provide evidence that [shows that] the Government's evidence is incomplete or inaccurate." *United States v. Fumo*, 655 F.3d 288, 210 (3d Cir. 2011).

In this matter, the loss amount used at sentencing was derived from the PSR. The PSR calculation was in turn based on the value of the fraudulently obtained loans on which the investor victims defaulted, minus the funds which were recouped by the lenders through the sale of the properties after default and minus a $100,000 credit per property which was the subject of a defaulted loan which had not yet been resold. (PSR at ¶ 94). Based on this calculation, the PSR attributed over $2.3 million of the loss resulting from the conspiracy in this matter to Petitioner based on twenty loans which the Government had shown Petitioner helped to secure through fraudulent means.

In his current motion to vacate sentence, Petitioner provides no evidence to rebut the loss calculation used at sentencing, and Petitioner fails to present any information which would suggest that this loss calculation — which the Government asserts did not include all of the loans Petitioner secured during the course of the conspiracy — overestimated the amount of loss he caused through his criminal actions.  At sentencing, based on the $2.3 million loss amount, this Court applied an enhancement of sixteen levels based on loss amount.  Pursuant to the Guideline as it existed at the time of sentencing, to establish that he should have received a lesser loss enhancement, Petitioner's counsel would have had to show that Petitioner was responsible for less than one million dollars of losses.[3]  *See* U.S.S.G. § 2B1.1(b)(1)(I) (2009); U.S.S.G. § 2B1.1(b)(1)(I) (2010).

Nothing Petitioner has submitted, which in this matter amounts to little more than a bald allegation that the loss amount was incorrect, suggests to this Court that a loss calculation less than that contained in the PSR would have been appropriate in this matter, and Petitioner has certainly failed to provide any evidence sufficient to suggest that, absent counsel's withdrawal of his objection, this Court would have found a loss amount of well over a million dollars less than that calculated by the PSR.  As such, Petitioner's assertion that an objection would have resulted in a lesser enhancement and in turn a lesser sentence is belied by the record and is insufficient to support a finding of *Strickland* prejudice in this matter.  Because Petitioner has failed to show that he would have received a lesser sentence had counsel not withdrawn his objection to the loss calculation in this matter, he has failed to show prejudice and his final ineffective assistance claim is also without merit.  *Glover*, 531 U.S. at 203-04.  As such, Petitioner's amended motion to vacate his sentence must be denied.

---

[3] Indeed, even under the amended guideline in effect today, a sixteen level enhancement would be appropriate so long as the loss amount was greater than $1.5 million.  U.S.S.G. § 2B1.1(b)(1)(I) (2015).

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  For the reasons expressed above, Petitioner has failed to show prejudice as to any of his claims of ineffective assistance of counsel in this matter, and all of his claims are therefore without merit.  Because all of Petitioner's claims are clearly without merit, he has failed to make a substantial showing of the denial of his constitutional rights, and his claims do not deserve encouragement to proceed further.  A certificate of appealability is therefore not warranted in this matter.  *Id.*

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's amended motion to vacate his sentence (ECF No. 4) is DENIED, and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.


_____
Hon. Jose L. Linares,
United States District Judge

Dated:  February _____, 2017